Opinion by Judge MILAN D. SMITH, Jr.; Partial Concurrence and Partial Dissent by Judge CALLAHAN.
OPINION
M. SMITH, Circuit Judge:
In this appeal, we address a district court’s obligation to scrutinize the terms of a proposed consent decree under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601-75 (CERCLA). In so doing, we reaffirm that a district court has an “obligation to independently scrutinize the terms of [such agreements],” by, inter alia, comparing “the proportion of total projected costs to be paid by the [settling parties] with the proportion of liability attributable to them.” United States v. Montrose Chem. Corp. of Cal., 50 F.3d 741, 747 (9th Cir.1995) (internal quotation marks and emphasis omitted).
We conclude that the district court properly declined to issue declaratory relief regarding the intervening parties’ (Inter-venors) future CERCLA liability. We further hold that the district court erred in entering the parties’ proposed CERCLA consent decrees, because the court failed to independently scrutinize the terms of the agreements, and in so doing, afforded undue deference to the Arizona Department of Environmental Quality (ADEQ). We therefore affirm in part, reverse in part, and remand for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
This case concerns liability under CERCLA and its state law counterpart, the Arizona Water Quality Assurance Revolving Funds (WQARF), A.R.S. § 49-281-391, for cleanup costs resulting from the contamination of the Broadway-Patano Landfill Site (the Site) — a hazardous waste site in Tucson, Arizona.
In January 2009, following an extensive investigation by the ADEQ, the State of Arizona filed a petition in the United States District Court for the District of Arizona, seeking to preserve the testimony of Ernest Joseph Blankinship — an elderly witness who had extensive knowledge of the Site’s contamination. During the course of the proceedings, several parties, who were potentially responsible for the Site’s contamination (i.e., potentially responsible parties), approached the State seeking to enter into early settlement agreements, releasing them from additional liability under CERCLA and WQARF.
On June 18, 2010, the State sent early settlement offers to those parties who requested early agreements, and the State ultimately reached eighteen proposed agreements with twenty-two parties. The proposed agreements require the settling parties to pay specified damages to the State, in exchange for a full release of liability under CERCLA and WQARF. Consistent with Section 113(f)(2) of CERC-LA, the proposed agreements further release the settling parties from any obligation to pay contribution to non-settling parties in the future. See 42 U.S.C. § 9613(f)(2).
In order to obtain judicial approval of the proposed agreements under 42 U.S.C. § 9613(f)(2), the State initiated this action against the settling parties (Defendants-Appellees), alleging liability for the Site’s cleanup under CERCLA and WQARF. Shortly thereafter, the State filed public notice of its intent to enter into consent *1009 decrees with the Defendants-Appellees. A number of non-settling parties filed comments objecting to the proposed consent decrees and the State filed responses.
On March 11, 2011, the State filed a motion to enter the consent decrees. The State’s motion explained that the total estimated cost of remediation was $75 million, and that the State calculated the liability of the settling parties to be de minimis— 0.01% to 0.2% of the total cost. Several potentially responsible parties, who were not parties to the settlements, subsequently moved to intervene in the action.[1] The district court granted these motions over the State’s objection.[2]
Intervenors opposed the State’s motion to enter the consent decrees. In so doing, they primarily argued that the State did not provide sufficient information for the parties or the court to determine whether the consent decrees were substantively “fair, reasonable, and consistent with CERCLA’s objectives.” Montrose, 50 F.3d at 748. Intervenors’ brief in opposition to the motion further requested a court order declaring that the State could not, in the future, hold Intervenors jointly and severally liable for costs related to the Site’s cleanup.[3]
The district court denied Intervenors’ request for declaratory relief and issued a twelve-page opinion approving the consent decrees. The district court’s opinion lays out the procedural background of this case and the legal framework under which proposed CERCLA consent decrees are reviewed. Although the district court recognized its obligation to independently scrutinize the terms of the settlements, the district court did not engage in a substantive analysis of the settlements’ terms. In approving the consent decrees,, the court declined to even discuss the parties’ individual or aggregate settlement amounts, and merely deferred to the ADEQ’s judgment that “the public interest is best served through entry of th[e] agreement[s].” Intervenors timely appealed.
JURISDICTION AND STANDARD OF REVIEW
We have jurisdiction under 28 U.S.C. § 1291. We review a district *1010 court’s grant or denial of declaratory relief for abuse of discretion. Cal. Ass’n of Rural Health Clinics v. Douglas, 738 F.3d 1007, 1011 (9th Cir.2013). We also review the approval of a consent decree for abuse of discretion. Turtle Island Restoration Network v. U.S. Dep’t of Commerce, 672 F.3d 1160, 1165 (9th Cir.2012) (citing Montrose, 50 F.3d at 746). For the following reasons, we affirm in part, vacate in part, and remand.
DISCUSSION
I. The District Court Properly Denied Intervenors’ Request for Declaratory Relief
We affirm the district court’s order denying Intervenors’ request for declaratory relief, because this request was not properly before the district court.
Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, “any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....” 28 U.S.C. § 2201.
A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc., 560 F.3d 935, 943 (9th Cir.2009). Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion. Id. (denying “motion for declaratory judgment” because such a motion is “inconsistent with the Federal Rules” (internal quotations marks omitted)).
Here, Intervenors’ request for declaratory relief was not properly before the district court. Intervenors did not request this relief in their complaints. Rather, they requested an order regarding their future liability in their brief opposing the State’s motion to enter the consent decrees. If Intervenors wish to obtain a declaratory judgment, they must either file a separate action seeking such relief, or move to amend their complaints on remand. Id.
II. The District Court Erred in Entering the Consent Decrees
We vacate and remand the district court’s order approving the consent decrees, because the court failed to independently scrutinize the terms of the agreements, see Montrose, 50 F.3d at 747-48, and in so doing, afforded undue deference to the ADEQ.
A. Legal Standard
1. CERCLA
“CERCLA is a comprehensive statute that [among other things] grants the President broad power to command government agencies and private parties to clean up hazardous waste sites.” Key Tronic Corp. v. United States, 511 U.S. 809, 814, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). We have explained:
[T]he Federal Government may clean up a contaminated area itself ... or it may [seek an injunction to] compel responsible parties to perform the cleanup.... Under the first option ... the government pays for the cleanup [using Superfund money] under § 9604 and then seeks recovery for its costs from [potentially responsible parties] under § 9607. This option has an obvious drawback for the government: It must pay first and sue for recovery of costs later (often in protracted litigation). The second option — compelling [potentially responsible parties] to perform the cleanup — therefore has its advantages.
*1011 City of Rialto v. W. Coast Loading Corp., 581 F.3d 865, 869 (9th Cir.2009) (internal quotations and citations omitted).
CERCLA also encourages states, localities, and private parties to assist in the cleanup of hazardous waste sites. Under Section 104, a state may enter into a contract with the Environmental Protection Agency (EPA), pursuant to which both the state and the EPA engage in cleanup efforts on a cost-sharing basis. 42 U.S.C. § 9604(c), (d). A state may also independently engage in CERCLA remediation efforts, so long as those efforts are not inconsistent with the EPA’s National Contingency Plan. See New York v. Shore Realty Corp., 759 F.2d 1032, 1047-48 (2d Cir.1985).
CERCLA imposes strict liability on certain classes of parties who are potentially responsible for a site’s contamination. Burlington, 556 U.S. at 608, 129 S.Ct. 1870; Anderson Bros., Inc. v. St. Paul Fire and Marine Ins. Co., 729 F.3d 923, 929 (9th Cir.2013). Under Section 107(a), the federal government or a state can sue responsible parties for “all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the [EPA’s] [N]ational [Contingency [P]lan.” 42 U.S.C. § 9607(a)(4)(A).[4]
CERCLA liability is generally joint and several, see Anderson, 729 F.3d at 926, 930, and a defendant seeking to avoid joint and several liability “bear[s] the burden of proving that a reasonable basis for apportionment exists,” Burlington, 556 U.S. at 614, 129 S.Ct. 1870. A defendant who is held jointly and severally liable under Section 107 may, however, seek contribution from other responsible parties under Section 113(f)(1). 42 U.S.C. § 9613(f)(1); Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 162-63, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004).
2. Early Settlements
“Congress sought through CERC-LA ... to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation.” Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 971 (9th Cir.2013) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 119 (2d Cir.1992)). Consistent with this objective, Section 113(f)(2) provides that a party who has resolved its CERC-LA liability through a judicially approved consent decree “shall not be liable [to other responsible parties] for claims for contribution regarding matters addressed in the settlement.” 42 U.S.C. § 9613(f)(2). This statutory framework contemplates that potentially responsible parties who do not enter into early settlement agreements may ultimately bear a disproportionate share of the CERCLA liability. For this reason, potentially responsible parties who do not enter into such agreements have standing to intervene in CERCLA actions to oppose the entry of CERCLA consent decrees. United States v. Aerojet Gen. Corp., 606 F.3d 1142, 1150-53 (9th Cir.2010).
3. Standard of Review
In order to approve a CERCLA consent decree, a district court must con- *1012 elude that the agreement is procedurally and substantively “fair, reasonable, and consistent with CERCLA’s objectives.” Montrose, 50 F.3d at 748. “Fair” and “reasonable” are comparative terms. Id. at 747. Thus, in order to approve a CERCLA consent decree, a district court must find that the agreement is “based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done.” United States v. Charter Int’l Oil Co., 83 F.3d 510, 521 (1st Cir.1996) (quoting United States v. Cannons Eng’g Corp., 899 F.2d 79, 87 (1st Cir.1990)).
In approving a CERCLA consent decree, the district court has an “obligation to independently scrutinize the terms of [the agreement].” Montrose, 50 F.3d at 747 (internal quotation marks omitted). In so doing, the court must “gauge the adequacy of settlement amounts to be paid by settling [parties by comparing] the proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then ... factor into the equation any reasonable discount for litigation risks, time savings, and the like.... ” Id. (emphasis omitted); Charter Int’l Oil, 83 F.3d at 515 (holding that the district court’s assessment must include “an appraisal of what the government is being given by the [settling party] relative to what the [settling party] is receiving”). A district court abuses its discretion where it does not fulfill its obligation to engage in this comparative analysis. Montrose, 50 F.3d at 746-47.
We have further explained that the district court’s review of a CERCLA consent decree may not be made in an “informational vacuum,” or where the record contains “no evidence at all on an important point.” Id. But, the mere fact that evidence sufficient to evaluate the terms of an agreement is either before the court or purportedly in the parties’ possession is not alone sufficient. The district court must actually engage with that information and explain in a reasoned disposition why the evidence indicates that the consent decrees are procedurally and substantively “fair, reasonable, and consistent with CERCLA’s objectives.” Id. at 748. As we have explained in other contexts: “Without some indication or explanation of how the district court arrived at [its conclusion], it is simply not possible for this court to review [the district court’s determination] in a meaningful manner,” and we have no way of knowing whether the district court abused its discretion. Padgett v. Loventhal, 706 F.3d 1205, 1208 (9th Cir.2013) (internal quotation marks omitted).
B. Application
Although the district court recognized its obligation to independently scrutinize the settlements, “[a]cknowledging that obligation and fulfilling it ... are two different things.” Montrose, 50 F.3d at 746. And here, the district court failed to adequately review the agreements.
Montrose requires that the district court “gauge the adequacy of settlement amounts to be paid by settling [parties]” by engaging in a comparative analysis. Id. at 747. But nowhere in the district court’s opinion is there an analysis comparing each party’s estimated liability with its settlement amount, or an explanation of why the settlements are “fair, reasonable, and consistent with CERCLA’s objectives.” Id. at 748. The court’s entire numerical analysis is found in a single footnote, which provides: “The State’s analysis indicates that, based upon a preliminary *1013 estimate of remedial action costs of $75 Million, the range of liability for each settling party extended from 0.01% of the estimated total clean up costs to 0.2%, or as expressed in dollar figures, from $10,000.00 to $150,750.00.” The opinion goes on to acknowledge, however, that the State did not provide any evidence supporting this estimated liability, or even “information from which the [district court could] confirm that the settling parties are [in fact] de minimis contributors.” The opinion even fails to mention the parties’ individual or aggregate settlement amounts.
Rather than engaging in the analysis that Montrose requires, the district court merely accepted the State’s representation that the settlements were substantively fair and reasonable because: “[t]he State ... informed the Court of the factual bases (files, interviews, documents) for its conclusions ... [and] explained the methods (software, past costs, estimates) to reach remediation costs.” In so doing, the court did not fulfill its responsibilities to independently assess the adequacy of the agreements and to provide a reasoned explanation for its decision.
In declining to substantively engage with the parties’ proposed agreements, the district court further explained that “review of the specific evidence relating to each party would require [the district court] to conduct an in-depth review of the evidence, second guess the agency, and deny the required deference to [the] ADEQ.” According to the district court, it must defer to the ADEQ’s judgment “unless it is arbitrary, capricious, and devoid of any rational basis.”[5]
As the First Circuit has observed, “almost all of the law regarding approval of CERCLA consent decrees comes from cases in which the [EPA is] a party.” City of Bangor v. Citizens Commc’ns Co., 532 F.3d 70, 89 (1st Cir.2008). In such cases, the approval of a CERCLA consent decree “reaches the appellate level ‘encased in a double layer of swaddling.’ ” Montrose, 50 F.3d at 746 (quoting Cannons, 899 F.2d at 84); see also United States. v. George A. Whiting Paper Co., 644 F.3d 368, 372 (7th Cir.2011). The first layer of swaddling requires the district court to “refrain from second-guessing the Executive” and to defer to the EPA’s expertise. Montrose, 50 F.3d at 746 (quoting Cannons, 899 F.2d at 84).[6] This is so, because “considerable weight [is] accorded to [a federal] executive department’s construction of a statutory scheme it is entrusted to administer.... ” Mead, 533 U.S. at 227-28, 121 S.Ct. 2164 (internal quotation marks omitted). We then defer to the district court’s judgment and review its approval of the proposed agreement for abuse of discretion. Montrose, 50 F.3d at 746.
*1014 But where a state, as opposed to the federal government, is a party to a proposed CERCLA consent decree, we do not defer to the state to the same degree as we would the federal government.[7] Bangor, 532 F.3d at 93-94. In Montrose we adopted the First Circuit’s “double-swaddling” test to review CERCLA consent decrees sponsored by the EPA. Nonetheless, we declined to apply or discuss this test in Arizona v. Components Inc., 66 F.3d 213, 215 (9th Cir.1995), a case involving a state sponsored CERCLA settlement, which we decided just six months after Montrose. In Components, we merely held that there was sufficient evidence before the district court for it to review the state-sponsored consent decree and that the district court properly reviewed that evidence. Id. at 216-17. We declined to discuss what, if any deference, was owed to the state agency’s interpretation of CERCLA.
The First Circuit has similarly declined to apply its “double-swaddling” standard to CERCLA consent decrees sponsored by state agencies. In Bangor, the First Circuit held:
Federal courts generally defer to a state agency’s interpretation of those statutes it is charged with enforcing, but not to its interpretation of federal statutes it is not charged with enforcing. We choose to accord some deference to [the state’s] decision to sign onto the [c]onsent [d]ecree, but not the same amount of deference we would accord the EPA in a consent decree involving the United States. We give deference in recognition that the state agency has some expertise. This lesser deference does not displace the baseline standard of review for abuse of discretion.
Bangor, 532 F.3d at 94 (internal citations omitted).
We find the reasoning of the First Circuit on this issue persuasive, and we hold that where state agencies have environmental expertise they are entitled to “some deference” with regard to questions concerning their area of expertise. But “[a] state agency’s interpretation of federal statutes is not entitled to the deference afforded [to] a federal agency’s interpretation of ... statutes” that it is charged with enforcing. Orthopaedic Hosp. v. Belshe, 103 F.3d 1491, 1495 (9th Cir.1997) (emphasis added); see also Bangor, 532 F.3d at 94. Applying these principles, if the district court finds that the ADEQ has expertise concerning the cleanup of the Site, it may afford “some deference” to the ADEQ’s judgment concerning the environmental issues underlying the CERCLA consent decrees at issue in this case.[8] The *1015 ADEQ is not entitled to deference, however, concerning its interpretation of CERC-LA’s mandate. Nor may the district court abdicate its responsibility to independently determine that the agreements are “fair, reasonable, and consistent with CERC-LA’s objectives,” Montrose, 50 F.3d at 748, by deferring to the ADEQ’s judgment that the agreements satisfy Montrose.[9]
CONCLUSION
Even if the EPA had been a party to the proposed consent decrees in this case, the district court would have failed to fulfill its duty to independently scrutinize the parties’ agreements, as required by Montrose. That error is compounded where, as here, the court deferred completely to a state agency’s judgment that the proposed agreements were fair, reasonable, and consistent with federal law. See id.
For these reasons, we vacate the district court’s order entering the consent decrees, and we remand for the court to reconsider the agreements under the principles set forth in this opinion. In reaching this conclusion, we express no opinion as to whether the consent decrees at issue in this case ought to be affirmed on remand, after the district court has fulfilled the responsibilities discussed in this opinion.[10]
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

. The State informed Intervenors that the State considered them to be potentially responsible parties for contamination at the Site. The State sent each Intervenor a settlement offer, but Intervenors rejected these agreements.

. After granting the motions to intervene, the court ordered the parties to brief whether additional discovery was necessary prior to the court’s ruling on the State's motion to enter consent decrees. The State took the position that additional discovery was not necessary. Intervenors disagreed. The court ultimately declined to order formal discovery, but instead ordered the State to supplement its motion to enter consent decrees with "additional information regarding the [] formula/methodology used to calculate settlement amounts.” On appeal, Intervenors challenge the district court’s order denying formal discovery.
"[Bjroad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.” Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir.2002) (internal quotation marks omitted). Here, the district court did not abuse its discretion in ordering the State to provide additional information through supplemental briefing, in lieu of ordering formal discovery.

.Throughout this litigation, the State has asserted that WQARF prohibits the State from holding Intervenors jointly and severally liable in future litigation. CERCLA contains no such limitation. See Burlington N. & Santa Re Ry. Co. v. United States, 556 U.S. 599, 614, 129 S.Ct. 1870, 173 L.Ed.2d 812 (2009) (liability under CERCLA is generally joint and several).

. The state need not obtain EPA authorization to engage in CERCLA remediation efforts and to recover costs under Section 107. Shore Realty, 759 F.2d at 1047-48 ("[W]e reject [the] argument that the State’s response costs are not recoverable because the State has failed to ... obtain[] EPA authorization.... Congress envisioned states’ using their own resources for cleanup and recovering those costs from polluters under section 9607(a)(4)(A). We read section 9607(a)(4)(A)’s requirement of consistency with the [National Contingency Plan] to mean that states cannot recover costs inconsistent with the response methods outlined in the [EPA’s National Contingency Plan].”).

. The State argues that under 42 U.S.C. § 9607(f)(2)(C) the State's judgment is entitled to a "rebuttable presumption of correctness.” But this “presumption of correctness” specifically applies to an appointed trustee’s natural resource damage assessment that is performed pursuant to the procedures set out in 42 U.S.C. § 9651(c). No such assessment is at issue here.

. The deference we owe to a federal agency’s administration of statutes it is charged with enforcing varies with the circumstances. United States v. Mead Corp., 533 U.S. 218, 227-28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). While the courts of appeals agree that the EPA is afforded significant deference when it seeks judicial approval of a proposed CERCLA consent decree, courts have not established whether the deference that we afford the EPA is the deference described in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the deference described in Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), or some other type of deference.

. Our dissenting colleague faults us for discussing deference and suggests that the issue of whether the district court abused its discretion in approving the consent decrees can be separated from “[the] different issue” of the degree to which a district court ought to defer to a state's decision to enter into an early settlement under CERCLA. While these two issues may be “different,” they are inextricably intertwined. We cannot decide whether a judge abused her discretion in approving a consent decree without deciding what degree of deference is owed to the party proposing the agreement. This is so because the threshold issue in deciding whether a district court abused its discretion is whether the district court "identified the correct legal rule to apply to the relief requested.” Perry v. Brown, 667 F.3d 1078, 1084 (9th Cir.2012) (internal quotation marks omitted). For this reason, if the district court applied the wrong deferential standard of review in assessing the consent decrees, we must hold that the court abused its discretion for that reason alone.

. State agencies, including those charged with enforcing environmental laws, may vary from state to state in terms of their competence, their resources, and their philosophies concerning the enforcement of environmental laws. These considerations are ones that a district judge may properly take into account *1015 in assessing the deference owed to an agency’s expertise.

. The dissent concedes that whether a particular agreement is "fair, reasonable, and consistent with CERCLA’s objectives,” Montrose, 50 F.3d at 748, "may present questions of statutory interpretation.” See Orthopaedic Hosp., 103 F.3d at 1495-96 (“[a] state agency’s interpretation of federal statutes is not entitled to the deference afforded [to] a federal agency’s interpretation of ... statutes” that it is charged with enforcing).

. The dissent has undertaken a review of the record de novo, and, having done so, concludes that there is sufficient evidence in the record to approve the consent decrees. This is contrary to the law of our circuit. The decision of whether to approve consent decrees in the first instance is entrusted to the sound discretion of the district court, not to our court. For this reason, if a district court fails to engage in the appropriate analysis, we are required to remand for the district court to complete its work. See Montrose, 50 F.3d at 743, 748.