**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

FEDERAL RESOURCES CORPORATION,
*Intervenor-Appellant*,

v.

THE COEUR D'ALENES COMPANY,
*Defendant-Appellee*.

No. 12-36065

D.C. No.
2:11-cv-00633-
EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
July 10, 2014—Seattle, Washington

Filed September 16, 2014

Before: A. Wallace Tashima and Mary H. Murguia,
Circuit Judges, and Cormac J. Carney, District Judge.[*]

Opinion by Judge Murguia

---

[*] The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY**

### CERCLA

The panel affirmed the district court's order granting the United States' motion to enter a consent decree concerning payment of the costs of hazardous waste clean-up efforts at the Conjecture Mine Site in Bonner County, Idaho.

The consent decree was made pursuant to the terms of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which authorizes the United States to settle with a potentially responsible party for an amount less than that potentially responsible party's proportionate share of the cost to clean up a polluted site if it has a limited ability to pay. The Coeur d'Alenes Company entered into such a settlement with the government, and the district court approved it over the objections of intervenor Federal Resources Corporation. The district court concluded that the consent decree was procedurally and substantively fair, reasonable, and consistent with CERCLA.

The panel held that the intervenor failed to establish that the district court abused its discretion by forgoing a comparative fault analysis that it deemed irrelevant to the specific, permissible factors underlying the terms of the consent decree. The panel further held that the district court's conclusion - that the record showed that the United States appropriately considered the financial health of the Coeur d'Alene Company when concluding that the proposed

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

settlement represented the maximum amount of money it could contribute to the cleanup costs - was well supported.

## COUNSEL

Katherine Lynn Felton (argued), and James P. Murphy, Murphy Armstrong, & Felton, Seattle, Washington; Stanley J. Tharp, Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, Idaho, for Intervenor-Appellant.

Peter Krzywicki (argued) and Paul Gormley, United States Department of Justice, Environmental and Natural Resources Division, Washington, D.C., for Plaintiff-Appellee.

W. Christopher Pooser (argued), and Kevin J. Beaton, Stoel Rives, Boise, Idaho, for Defendant-Appellee.

## OPINION

MURGUIA, Circuit Judge:

This case concerns the district court's obligations in reviewing a settlement made pursuant to the provisions of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–75, that authorize the United States to settle with a potentially responsible party ("PRP") for an amount less than that PRP's proportionate share of the cost to clean up a polluted site if it has a limited ability to pay. *See* 42 U.S.C. §§ 9622(e)(3)(A), (f)(6)(B). The Coeur d'Alenes Company ("CDA") entered into such a settlement with the government, and the district court approved it over the objections of intervenor Federal

Resources Corporation ("FRC") that the district court was required to conduct a comparative fault analysis and to scrutinize more closely the government's assessment of CDA's ability to pay.  We affirm.

# I

In 2011, the United States filed lawsuits against FRC and CDA, among other PRPs, in the District of Idaho to recover the cost of hazardous waste clean-up efforts at the Conjecture Mine Site in Bonner County, Idaho (the "Site").  The government proceeded against both parties under CERCLA, which "imposes strict liability on certain classes of parties who are potentially responsible for a site's contamination." *Arizona v. City of Tucson*, No. 12-15691, 2014 WL 3765569, at *3 (9th Cir. Aug. 1, 2014) (citing *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 615 (2009); *Anderson Bros. v. St. Paul Fire & Marine Ins. Co.*, 729 F.3d 923, 929 (9th Cir. 2013)).  "CERCLA liability is generally joint and several," although a party held liable under CERCLA may usually seek contribution from other PRPs held liable for the cost to remediate the same site.  *Id*.; *see also* 42 U.S.C. § 9613.

> "Congress sought through CERCLA . . . to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 971 (9th Cir. 2013). Consistent with this objective, Section 113(f)(2) [of CERCLA] provides that a party who has resolved its CERCLA liability through a judicially approved consent decree "shall not be liable [to other

responsible parties] for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). This statutory framework contemplates that potentially responsible parties who do not enter into early settlement agreements may ultimately bear a disproportionate share of the CERCLA liability. For this reason, potentially responsible parties who do not enter into such agreements have standing to intervene in CERCLA actions to oppose the entry of CERCLA consent decrees. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1150–53 (9th Cir. 2010).

*City of Tucson*, 2014 WL 3765569, at \*4 (second alteration in original).

In March 2011, the United States sued FRC to recover costs associated with cleaning up the Site. In December of that year, after more than a year of negotiation, the United States also brought an action against CDA to recover costs associated with the clean-up of the Site. However, simultaneous with its complaint against CDA, the government lodged a proposed consent decree (the "Consent Decree"), notice of which was published in the Federal Register one week later. *See* 76 Fed. Reg. 79,710 (Dec. 22, 2011).

Under the terms of the Consent Decree, CDA would be obligated to pay a total of $350,000, plus interest. The government did not arrive at this figure by taking the total estimated cost of cleaning up the Site and multiplying that by the fraction of liability reasonably attributable to CDA;

rather, $350,000 was the amount the government believed CDA would be able to pay without risking the company's ongoing viability. The government had arrived at the figure with the assistance of a financial analyst, who conducted a review of CDA's records in accordance with the Environmental Protection Agency's General Policy on Superfund Ability to Pay Determinations.

The limitation of CERCLA liability based on a party's ability to pay is contemplated by the statute. *See* 42 U.S.C. § 9622(e)(3)(A) ("[G]uidelines for preparing nonbinding preliminary allocations of responsibility . . . may include . . . ability to pay."). Courts have routinely recognized the important policy considerations served by so-called "ability to pay" settlements. For example, in *United States v. Bay Area Battery*, the district court observed that

> [w]hile certain PRPs have deep pockets and can afford to shoulder their full share of liability for a site's cleanup, other PRPs simply do not have the resources to pay their share. . . .

> When negotiating with PRPs who are small businesses or individuals of modest means, the Government seeks to avoid settlements that will force the businesses and individuals into bankruptcy or require them to sell off major assets. Instead, the Government requires such PRPs to pay an amount that will allow businesses to continue operating and will not jeopardize the modest lifestyles of individual parties. In this fashion, the

Government will recover some of its past costs while the PRPs are spared financial ruin.

895 F. Supp. 1524, 1529–30 (N.D. Fla. 1995); *see also United States v. Weiss*, No. 11-CV-02244-RM-MJW, 2013 WL 5937912, at *3–4 (D. Colo. Nov. 6, 2013); *United States v. Hecla Ltd.*, No. 96-0122-N-EJL, 2011 WL 3962227, at *3 (D. Idaho Sept. 8, 2011); *United States v. Brook Vill. Assocs.*, No. CIV.A. 05-195, 2006 WL 3227769, at *6–7 (D.R.I. Nov. 6, 2006).

On February 2, 2012, during the comment period for the Consent Decree, FRC objected on the basis that the amount of CDA's liability was based on its ability to pay rather than on its degree of fault relative to other PRPs for the pollution at the Site; FRC also questioned the thoroughness of the government's investigation into CDA's financial situation. FRC's desire to object is understandable: because CERCLA liability is generally joint and several, *see* 42 U.S.C. § 9607(a), and because settlors like CDA are immune to contribution claims brought by fellow PRPs, *see id.* § 9613(f)(2), a reduction in CDA's liability could have the direct effect of increasing FRC's own liability.

After the government moved for entry of the Consent Decree, the district court permitted FRC to intervene in the action against CDA.  On October 25, 2012, FRC filed an objection to the Consent Decree on largely the same grounds as its objections during the comment period.  However, CDA's objection as an intervenor went into greater detail in alleging that the government failed to investigate the extent of CDA's financial resources.  Specifically, FRC claimed that CDA had liability insurance coverage relevant to the Site

clean-up and that the government had failed to take this coverage into account when assessing CDA's ability to pay.

Rejecting FRC's objections, on November 28, 2012, the district court granted the United States' motion to enter the Consent Decree after concluding that it was procedurally and substantively fair, reasonable, and consistent with CERCLA. In its capacity as an intervenor, FRC appeals from the district court's order.

## II

To approve a consent decree under CERCLA, a district court must conclude that the agreement is procedurally and substantively "fair, reasonable, and consistent with CERCLA's objectives." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 748 (9th Cir. 1995). When, as here, the proposed consent decree is the result of negotiations with the United States, "the approval of a CERCLA consent decree 'reaches the appellate level encased in a double layer of swaddling.'" *City of Tucson*, 2014 WL 3765569, at * 5 (quoting *Montrose*, 50 F.3d at 746).

> The first layer of swaddling requires the district court to "refrain from second-guessing the Executive" and to defer to the EPA's expertise. *Montrose*, 50 F.3d at 746. This is so, because "considerable weight [is] accorded to [a federal] executive department's construction of a statutory scheme it is entrusted to administer. . . ." *United States v. Mead Corp.*, 533 U.S. 218, 227–28 (2001). We then defer to the district court's judgment and review its approval of the proposed

> agreement for abuse of discretion. *Montrose*,
> 50 F.3d at 746.

*Id*. (some alterations in original).

FRC's two arguments on appeal essentially track its objections to the Consent Decree in the district court. First, FRC argues that the district court abused its discretion by failing to conduct a comparative fault analysis before approving the Consent Decree, notwithstanding the fact that the amount of CDA's liability was based on its ability to pay, rather than on its purported share of the fault for polluting the Site. Second, FRC argues that the district court abused its discretion by approving the Consent Decree in spite of evidence that purportedly demonstrated that CDA had relevant insurance coverage that the government had failed to take into account in calculating CDA's ability to pay. Neither argument is persuasive.

## III

FRC argues that the district court was required to analyze the comparative fault of the parties in order to determine whether the Consent Decree was substantively fair. It is true that we require a district court to review a proposed consent decree for the purpose of determining whether it is fair—not only procedurally, but also substantively. *See City of Tucson*, 2014 WL 3765569, at *4. It is also true that, in cases where a PRP's liability has not been established based on the PRP's limited ability to pay, we have recognized that a finding of substantive fairness ordinarily requires a district court to

> find that the agreement is "based upon, and
> roughly correlated with, some acceptable

> measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party] has done."

*Id*. (quoting *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 521 (1st Cir. 1996)).

Nevertheless, because the Consent Decree was based on CDA's ability to pay—and not on the entity's actual share of fault—it is unclear what effect, if any, a comparative fault analysis would have had on the district court's determination that the settlement was substantively fair. We certainly see no need to mandate that a district court conduct the analysis, particularly given the considerable deference afforded to a district court order approving a consent decree under CERCLA. *See Montrose*, 50 F.3d at 746–47. CERCLA expressly permits the government to take ability to pay into account when fashioning a settlement with a PRP, *see* 42 U.S.C. §§ 9622(e)(3)(A), (f)(6)(B), and FRC has failed to establish that the district court abused its discretion by forgoing a comparative fault analysis that it deemed irrelevant to the specific, permissible factors underlying the terms of the Consent Decree. We do not foreclose the possibility that a district court might conduct a comparative fault analysis when evaluating a settlement that has been proffered as having been reached on the basis of ability to pay. However, we decline to cabin the district court's discretion to determine how best to evaluate the fairness of a settlement in light of the specific circumstances at issue.

We understand FRC's concern that it may be forced to shoulder a greater portion of the cost to clean up the Site than

it would have had the United States and CDA not entered into a settlement based on CDA's limited ability to pay. Indeed, we recognize that FRC being held disproportionately liable is a very likely outcome. However, such an outcome would not be inconsistent with CERCLA, nor would it merely be an unintended consequence of the statute. Rather, the potential for disproportionate liability is an integral and purposeful component of CERCLA. As the First Circuit has observed:

> Congress explicitly created a statutory framework that left nonsettlors at risk of bearing a disproportionate amount of liability. The statute immunizes settling parties from liability for contribution and provides that only the amount of the settlement—not the pro rata share attributable to the settling party—shall be subtracted from the liability of the nonsettlors. This can prove to be a substantial benefit to settling PRPs—and a corresponding detriment to their more recalcitrant counterparts.
>
> Although such immunity creates a palpable risk of disproportionate liability, that is not to say that the device is forbidden. To the exact contrary, Congress has made its will explicit and the courts must defer. Disproportionate liability, a technique which promotes early settlements and deters litigation for litigation's sake, is an integral part of the statutory plan.

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 91–92 (1st Cir. 1990).

There is nothing remarkable about the prospect of FRC being held disproportionately liable, and, absent another reason that actually has some grounding in the statutory provision at issue here, there is no reason for the district court to spend its time quantifying precisely *how* disproportionately FRC may be held liable.

## IV

FRC also argues that the district court erred by failing to consider the "substantial evidence" submitted by FRC "indicating the existence of liability insurance." FRC argues that a predecessor entity of CDA had purchased liability coverage that was in effect at the time the Site was polluted; according to FRC, this insurance coverage increases CDA's effective ability to pay. FRC claims that it was "severely prejudiced" by the district court's refusal to take into account the purported insurance coverage when considering whether the Consent Decree was fairly based on CDA's ability to pay.

We reject FRC's speculative argument, as we see no reason to reject the district court's determination that "the record shows that the Government appropriately considered the financial health of the CDA Company and concluded that the proposed settlement represents the maximum amount of money it could contribute to the cleanup costs." The district court's conclusion is well supported. The government retained an expert financial analyst to evaluate CDA's ability to pay. That analyst reviewed numerous records in accordance with EPA procedures for determining ability to pay, and she explicitly stated that the information she received "provided [her] with a sufficient basis to evaluate [CDA's] ability to pay." CDA also retained an expert to investigate the existence of any possible insurance that CDA

might have but not know about. The expert did not find evidence of any coverage, and CDA turned the results of the investigation over to the government.

It is also not lost on us that, in the Consent Decree, CDA certified to the district court that it had "fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site." By the terms of the Consent Decree, if CDA's financial representations are subsequently determined by the EPA to be false, CDA will lose its statutory protection from contribution claims by other PRPs, including FRC. Thus CDA had nothing apparent to gain by making any misrepresentations about the availability of insurance coverage.

The evidence FRC has offered in the record does not appear conclusively to demonstrate the existence of relevant insurance coverage. Rather, it suggests the possibility of coverage based on a chain of association between CDA and its predecessor entities; whether any coverage actually was transferred to CDA is disputed. Further, while FRC points to several documents from CDA's predecessor that include a line item expense for "liability insurance," the government argues in response that the record demonstrates that the "liability insurance" at issue is actually workman compensation insurance, and, moreover, that the relationship between CDA and its predecessor did not pass liability between the two entities – and, thus, did not pass any relevant insurance coverage to CDA either.

For our purposes, FRC does not challenge CDA's ability to pay so much as it challenges the sufficiency of the government's investigation and of the district court's review

of the thoroughness of that investigation. For FRC to have any success on its claim, it would have to demonstrate that the district court abused its discretion by accepting the sufficiency of an investigation conducted by the government in accordance with its own established procedures, and it would bear an extraordinarily high burden in demonstrating such an abuse in light of the tremendous deference the district court rightfully pays to the government's determination that a consent decree is fair and proper. *See Montrose*, 50 F.3d at 746–47.

"[A] district court abuses its discretion 'when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment.'" *Johnson v. Uribe*, 700 F.3d 413, 424 (9th Cir. 2012) (quoting *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012)). In light of the evidence the government presented demonstrating that it adequately investigated CDA's ability to pay – including through insurance coverage – and the double deference we pay to the district court's order approving the Consent Decree, we cannot conclude that the district court's acceptance of the government's assessment of CDA's ability to pay amounts to a clear error of fact or of judgment.

## V

Because the district court did not abuse its discretion by approving the Consent Decree, we **AFFIRM.**