

FILED

AUG 26 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MORELAND PROPERTIES LLC, a
Colorado Limited Liability Company,

Plaintiff - Appellant,

v.

GOODYEAR TIRE & RUBBER
COMPANY, named as The Goodyear Tire
& Rubber Company, an Ohio Corporation
and GOODYEAR FARMS
INCORPORATED, an Arizona
Corporation,

Defendants - Appellees.

No. 24-2451

D.C. No.
2:20-cv-02297-SRB
District of Arizona,
Phoenix

ORDER

Before: GRABER, BERZON, and BENNETT, Circuit Judges.

The memorandum disposition filed on June 12, 2025, is withdrawn. A replacement memorandum disposition and a partial dissent by Judge Graber will be filed concurrently with this order.

With these amendments, the panel has unanimously voted to deny Appellant's petition for rehearing. Judge Bennett has voted to deny the petition for rehearing en banc, and Judge Berzon and Judge Graber have so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40. The petition for rehearing en banc is denied. No additional petitions for rehearing may be filed.

NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 26 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MORELAND PROPERTIES LLC, a
Colorado Limited Liability Company,

        Plaintiff - Appellant,

  v.

GOODYEAR TIRE & RUBBER
COMPANY, named as The Goodyear Tire
& Rubber Company, an Ohio
Corporation; GOODYEAR FARMS
INCORPORATED, an Arizona
Corporation,

        Defendants - Appellees.

No. 24-2451

D.C. No.
2:20-cv-02297-SRB

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted March 26, 2025
Submission Withdrawn April 8, 2025
Resubmitted June 10, 2025
Phoenix, Arizona

Before: GRABER, BERZON, and BENNETT, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge GRABER.

    Plaintiff Moreland Properties, LLC ("Moreland") appeals (1) the district

---

    * This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1

court's grant of summary judgment for Defendants Goodyear Farms, Inc. and the Goodyear Tire and Rubber Company (collectively, "Goodyear") on Moreland's fraud claim and (2) the district court's judgment for Goodyear following a bench trial on Moreland's Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") claim. We affirm on both issues.

1. The district court correctly concluded that Moreland's fraud claim was time barred. Arizona applies a three-year limitations period to fraud claims. Ariz. Rev. Stat. § 12-543(3). The statute of limitations does not begin to run "until the discovery by the aggrieved party of the facts constituting the fraud or mistake." *Id.* Discovery occurs at the point "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986). Because a claim accrues when a reasonably diligent party would have discovered it, this discovery rule includes a corollary "duty to investigate." *Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 1998); *Walk v. Ring*, 44 P.3d 990, 994 (Ariz. 2002). As a result, the statute of limitations "may begin to run before a person has actual knowledge of the fraud or even all the underlying details of the alleged fraud." *Mister Donut*, 723 P.2d at 672; *see also Coronado Dev. Corp. v. Superior Ct. of Ariz. ex rel. County of Cochise*, 678 P.2d 535, 537 (Ariz. Ct. App. 1984).

The report from Western Technologies Inc. ("WTI") in January 2015 showed an average arsenic concentration of around 50 mg/kg. Goodyear's 2004 Declaration

2

of Environmental Use Restriction ("DEUR") had reported a 95% upper confidence limit mean arsenic concentration of only 10 mg/kg. The WTI report's findings were sufficiently alarming that the prospective buyer to whom Moreland had intended to sell the land withdrew from the sale, and Moreland initiated remediation efforts. Further, William Moreland testified that he understood the WTI report to mean that "the property is not as stated in the DEUR" and that, as a result, "I couldn't sell it saying there's a DEUR as I bought it. And this DEUR is misrepresented or it's fraudulent. I couldn't do it." The WTI report therefore put a reasonable person on notice that fraud may have occurred and that an investigation was called for.

That scienter is one of the facts constituting fraud, *see Merck & Co. v. Reynolds*, 559 U.S. 633, 648-49 (2010), does not affect the date at which a reasonably diligent plaintiff in Moreland's position would have begun investigating. The WTI report's finding of extremely elevated arsenic levels was sufficient to put a reasonable person on notice to investigate whether Goodyear misrepresented the concentrations in the DEUR and, if so, whether it did so knowingly, even though the report did not address those issues.

When Moreland did investigate the reason for the inconsistency between its sampling and the DEUR, it took approximately one month for it to discover that Goodyear allegedly had not "take[n] sufficient pre- and post-confirmation arsenic samples" to "delineate, confirm, or further excavate the areas of arsenic impacted

soil," even though it was required to do so by the work plan approved by the Arizona Department of Environmental Quality ("ADEQ"). It is these findings on which Moreland relied to allege both the falsity of the DEUR and scienter. Had Moreland acted as a reasonably diligent plaintiff would have and begun investigating the basis for the arsenic inconsistency after receiving the WTI report, it would have discovered the facts constituting fraud—including those suggesting scienter—in early 2015. Because Moreland filed suit on November 30, 2020, more than three years later, its fraud claim is barred by the statute of limitations.

2. The district court correctly found for Goodyear on Moreland's CERCLA claim. To recover, Moreland had to show that its response action was "consistent with" the National Contingency Plan ("NCP"). *Carson Harbor Vill., Ltd. v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006); *see* 42 U.S.C. § 9607(a)(4)(B). "A private party response action will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements. . . ." 40 C.F.R. § 300.700(c)(3)(i).

A. "CERCLA and the National Contingency Plan divide response actions into two broad categories: removal actions and remedial actions." *United States v. W.R. Grace & Co.*, 429 F.3d 1224, 1227 (9th Cir. 2005); *see also* 42 U.S.C. § 9601(23), (24). "[B]oth types of actions have substantial requirements, but the [NCP's] requirements for remedial actions are much more detailed and onerous." *W.R.*

4

*Grace*, 429 F.3d at 1228 (citation omitted). "[R]emoval actions encompass interim, partial time-sensitive responses taken to counter serious threats to public health." *Id.* at 1245; *see also Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 478 (9th Cir. 2024). "Remedial actions, on the other hand, are often described as permanent remedies to threats for which an urgent response is not warranted." *W.R. Grace*, 429 F.3d at 1228 (footnote omitted); *see also Santa Clarita*, 99 F.4th at 478.

The district court properly characterized Moreland's response as a remedial action. Moreland's response did not address a time-sensitive public health threat, because there was "no evidence that the elevated arsenic or toxaphene concentrations in the soil required 'immediate attention.'" The only evidence of risk Moreland provided was that the degree of arsenic contamination on the land exceeded the applicable Arizona Soil Remediation Level ("SRL") set by ADEQ; Moreland presented no evidence that the risk was time-sensitive or substantial enough to necessitate an immediate response. That the land was a vacant, undeveloped lot suggests there was minimal risk that someone would come into contact with the contaminated soil, and there was evidence introduced at trial that the soil presented no risk of groundwater contamination.

Moreland's response was also "comprehensive" and "permanent," not "interim" or "partial." *W.R. Grace*, 429 F.3d at 1228, 1245. By Moreland's own

5

estimation, the excavation reduced the soil's arsenic concentration to 9.9 mg/kg and the toxaphene concentration to 4.9 mg/kg. These values are below the current residential SRLs, indicating that Moreland's response "fully eliminate[d] the public health threat" posed by the contamination. *Id.* at 1247.

That Moreland's ADEQ-approved work plan referred to the response as a "removal" is not pertinent. An ADEQ employee explained during trial that ADEQ's approval of Moreland's work plan involved no substantive determination that Moreland's response was a removal action under CERCLA, nor would ADEQ's interpretation of CERCLA be entitled to deference. *See Arizona v. City of Tucson*, 761 F.3d 1005, 1014 (9th Cir. 2014).

Accordingly, Moreland's response is properly characterized as a remedial action.

B. Because Moreland's response was a remedial action, the NCP required, among other things, that Moreland conduct a feasibility study containing "[a] detailed analysis" of "alternatives that represent viable approaches to remedial action." 40 C.F.R. § 300.430(e)(9)(i). "One of the hallmarks of the feasibility study requirement is assessing a variety of possible alternatives and providing analysis of the costs, implementability, and effectiveness of each, and choosing the best alternative for the site at issue." *Carson Harbor*, 433 F.3d at 1268; *see also* 40 C.F.R. § 300.430(e)(9)(iii) (listing criteria that the feasibility study must consider).

6

Moreland has submitted no evidence to show that it conducted the required feasibility study or otherwise analyzed remedial alternatives. Its work plan considered only excavation. Its 2017 sampling report likewise did not assess any remedial alternatives. Although the WTI report noted that "[l]ess expensive remediation/mitigation alternatives are potentially available," it did not list those alternatives, or analyze the costs, effectiveness, or other features of such alternatives, aside from stating that they "often involve increased agency interaction and frequently less certainty in the schedule for the project." Because "discussing a single remediation alternative does not establish substantial compliance with the feasibility study requirements of the National Contingency Plan," these documents do not suffice. *Carson Harbor*, 433 F.3d at 1268. The feasibility studies Marsh Aviation commissioned in the 1990s do not satisfy the NCP's requirement, as they addressed only the toxaphene contamination; no remedial options to resolve the arsenic contamination at issue in Moreland's remediation were discussed. Further, because the studies were conducted before Goodyear's remediation attempt, they did not accurately characterize the scope of the contamination Moreland confronted or the relative merits of various remedial options available to Moreland.

In sum, Moreland did not substantially comply with the feasibility study requirement, so its remediation was inconsistent with the NCP. Because Moreland is barred from recovering on that ground, we do not consider whether Moreland

7

complied with the NCP's public participation requirement or whether its response

costs were necessary.

**AFFIRMED.**



<u>Moreland Properties LLC v. Goodyear Tire & Rubber Co.</u>, No. 24-2451

GRABER, Circuit Judge, concurring in part and dissenting in part:

I agree with the disposition's analysis of the federal claim, and I join that part entirely.  But I respectfully disagree with the disposition's analysis of the state-law fraud claim.  I would hold that, construing the facts in the light most favorable to Plaintiff, as we must, a reasonable juror could decide that the 2015 report did not trigger an immediate duty to investigate whether Defendant had committed <u>fraud</u>.  <u>See</u> <u>Walk v. Ring</u>, 44 P.3d 990, 995 (Ariz. 2002) (holding that a reasonable juror could conclude that no immediate duty to investigate a dentist's negligence arose from severe pain following a dental procedure); <u>see also</u> <u>Satamian v. Great Divide Ins.</u>, 545 P.3d 918, 926 (Ariz. 2024) (holding that the date of discovery may vary depending on the specific cause of action).  I therefore would reverse the summary judgment and remand for further proceedings on the state-law claim.